UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **DAVID ANDRES QUIJANO-RODRIGUEZ,** § § § *Petitioner*, § VS. § § § **UNITED STATES OF AMERICA,** § § *Respondent*. § | **CIVIL ACTION NO. L-07-144** **CRIMINAL CASE NOS. L-06-1330-1, L-06-658-1** |

## OPINION AND ORDER

Pending before the Court is Petitioner David Andres Quijano-Rodriguez's ("Quijano") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. [Dkt. No. 1].[1] For the reasons stated herein, the Court ORDERS an evidentiary hearing.

### I.   BACKGROUND AND PROCEDURE

####   A.   Background

#####     1.   *Quijano's Initial Indictment*

On April 1, 2006, Quijano was apprehended at the Interstate (IH) 35 United States Border Patrol checkpoint in Laredo, Texas, after ten (10) undocumented aliens were found in the tractor trailer he was operating. [Presentence Investigation Report ("PSR") ¶ 6]. At the time of his arrest, and in a subsequent interview by a United States Pretrial Services officer, Quijano claimed that he was a United States citizen by virtue of having been born in Puerto Rico and he provided a fraudulent birth certificate in the name of Luis Reamy Rodriguez to substantiate his claim. [*Id.* ¶¶

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. Unless indicated otherwise, "Dkt. No." will be used to refer to filings in case number 5:07-cv-144. "Cr. Dkt. No." refers to the docket entries in criminal case number 5:06-cr-1330-1.

6, 12]. On April 25, 2006, a federal grand jury returned a one-count indictment against Quijano in case number L-06-658-1, charging him with illegally transporting undocumented aliens in violation of Title 8, United States Code, Section 1324 and Title 18, United States Code, Section 2. [L-06-CR-658-1, Dkt. No. 9]. On June 7, 2006, Quijano appeared before United States Magistrate Judge Adriana Arce-Flores and entered a guilty plea to the indictment pursuant to a written plea agreement. [*See* L-06-CR-658-1, Dkt. No. 14]. At that time, Quijano continued to misrepresent himself as Luis Reamy Rodriguez and maintained this position until sentencing. A subsequent investigation by the Bureau of Immigration and Customs Enforcement determined that Quijano's true name is David Andres Quijano-Rodriguez, a Columbian national who had been deported from the United States on November 14, 1994, following a felony drug conviction in Monmouth County, New Jersey. [PSR ¶ 8]. Quijano admitted to these facts in a subsequent interview. [*Id.*]. On September 21, 2006, the Court sentenced Quijano to a total of twenty-two (22) months of imprisonment and to a subsequent three-year term of supervised release on the transporting of aliens charge. [L-06-CR-658-1, Minute Entry of September 21, 2006]. Judgment was entered on September 26, 2006. [Dkt. No. 26].

### 2. *Quijano's Subsequent Indictment*

On the same day that judgment was entered for the transporting offense, a federal grand jury indicted Quijano in criminal case number L-06-1330-1, charging him with illegal re-entry after having been previously denied admission, excluded, deported, and removed, in violation of Title 8, United States Code, Section 1326. [Cr. Dkt. No. 1]. Quijano decided to forego trial and entered a plea of guilty before the Magistrate Judge on November 9, 2006. [Minute Entry of November 9, 2006]. Although no written plea agreement was entered into, an oral plea agreement was presented. Assistant United States Attorney ("AUSA") Brian Sardelli indicated that pursuant

to that agreement, the Government agreed to recommend a one-point reduction for acceptance of responsibility, as well as one-point reduction for waiver of all appeals and collateral attacks.

Pursuant to the requirements of Federal Rule of Criminal Procedure 11, the Magistrate Judge advised all defendants entering plea on that day in open court of the rights and implications surrounding a guilty plea. [*See* Cr. Dkt. No. 18 at 1]; *see also* Fed. R. Crim. P. 11(b)(1). The Court focused part of its discussion on the defendants' waiver of their rights to appeal. *See* Fed. R. Crim. P. 11(b)(1)(N). Along with the other defendants, Quijano confirmed several times that he understood that he had waived such rights and that he nevertheless wished to proceed with his plea of guilty.[2] After AUSA Sardelli read the factual basis for Quijano, the colloquy proceeded as follows:

| | |
|---|---|
| Judge: | Any corrections for Mr. Quijano? |
| Jeffrey Czar: | No, your honor. |
| Judge: | Mr. Quijano how do you plead sir, guilty or not guilty? |
| Quijano: | Guilty |
| Judge: | How old are you? |
| Quijano: | Thirty-three |
| Judge: | Where were you born? |
| Quijano: | Cali, Colombia |
| Judge: | Are you still a citizen of Colombia? |
| Quijano: | Yes |
| Judge: | You speak English, did you ever live in the United States? |
| Quijano: | Yes your honor (followed by something unintelligible). |
| Judge: | Oh, you did. |
| Quijano: | Yes, your honor. |
| Judge: | And have you been able to understand the proceedings as I have explained them to you today sir? |
| Quijano: | Yes, your honor. |
| Judge: | Then the Court will recommend your plea of guilty. Report and recommended to the district court. Order a PSI for him and give him a sentencing date at this time. |
| Case Manager: | February 8 at 9:00. |
| Judge: | He is remanded and Mr. Czar you are excused. |

---

[2] As with the other defendants, the Magistrate Judge made no mention of a waiver of Quijano's right to collaterally attack his conviction and sentence.

The Court then found that Quijano (1) had consented orally and in writing to enter his guilty plea; (2) fully understood the nature of the charges and penalties; (3) understood his Constitutional and statutory rights and wished to waive those rights; and (4) entered his plea freely and voluntarily. [Cr. Dkt. No. 18 at 2]. The Court also found that there was an adequate basis for his plea. [*Id.*].

### 3. *Sentencing*

This Court adopted the Magistrate Judge's Report and Recommendation, [Cr. Dkt. No. 19], and sentenced Quijano on February 8, 2007. [*See* Minute Entry of February 8, 2007]. At sentencing, the Court heard from Quijano and his attorney. Neither mentioned the plea agreement. AUSA Sardelli then stressed the importance of noting the timetable in the case: Quijano had been caught smuggling aliens in the 8 U.S.C. § 1324 case and initially gave a false birth certificate under the name of Luis Reamy Rodriguez. The information about his true identity and illegal presence in the United States did not come forth until after he had pleaded guilty to the § 1324 charge, which is how the 8 U.S.C. § 1326 case came forth. The AUSA stated that for this reason, both offenses gave rise to separate cases and that consequently they should be treated separately. The AUSA then asked the Court for a reasonable sentence within the guideline range and that any sentence for the § 1326 case run consecutive to the § 1324 case. At this time Quijano neither objected to the AUSA's statement, nor indicated that the oral agreement included a promise that the sentences would run concurrently.

At the end of the sentencing discussion however, Quijano asked his attorney to bring to the Court's attention that he wished the sentences to run concurrently because both offenses stemmed from the same arrest, which occurred at the same time. The Court disagreed, stating that the illegal re-entry is a separate offense. In other words, while both offenses came to light at the same time—although the illegal re-entry was confirmed at a later date—the re-entry offense had

occurred previously because Quijano had been living in the United States for some time. Recognizing the unique nature of Quijano's case—namely that Quijano did not commit an additional crime after the transporting offense to warrant him being brought before the Court—the Court sentenced Quijano below the guideline range as he would have been if both offenses had been prosecuted at the same time, that is, without the added criminal history points.[3] Having made the three-point adjustment in the interest of fairness and justice, the Court indicated that it did not believe that running the two sentences concurrently would result in a reasonable sentence.

The Court sentenced Quijano to a total of forty-one (41) months of imprisonment to be served consecutive to the sentence previously imposed in case number L-06-CR-658-001. [*See* Minute Entry of February 8, 2007]. The Court also sentenced Quijano to a subsequent three-year term of supervised relief. [*See id.*]. Judgment was entered on February 16, 2007. [Dkt. No. 26].

### B. The Instant Petition

Quijano filed the instant motion on November 13, 2007, making two interrelated arguments. First, that the government breached the plea agreement because a promise was made that the Court would run his illegal re-entry sentence concurrent with the twenty-two (22) month transporting sentence if he pled guilty and waived his right to appeal.[4] [Dkt. No. 1 at 4]. Second, Quijano argues that he suffered ineffective assistance of counsel because his lawyer did not properly advise him of his right to appeal. [*Id.* at 4, 5, 7, 8]. Thus, Quijano petitions the Court to correct his sentences to run concurrent to each other, rather than consecutively. [*Id.* at 4, 11, 14].

---

[3] The Court made this adjustment not because it believed that the guideline range had not been properly calculated, but because it believed that it would be reasonable to do so without counting the criminal history points.

[4] Quijano also argues that he could have pled guilty to both charges and received one sentence, but because of "malicious intent [on behalf of the prosecutor], that charge of re-entry was held back and 15 days later [he] was charged with re-entry." [Dkt. No. 1 at 14]. However, Quijano misrepresented his identity and citizenship to the Court when he entered a guilty plea for the transporting offense. Thus, because at the time of his first plea it had not yet been discovered that he was a previously deported alien, he could not have pled guilty to both charges simultaneously.

## II.     DISCUSSION

### A.     Standard for Relief under 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaugh*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)). Generally, § 2255 allows relief in four areas: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Upon the filing of such a petition, the sentencing court must order a hearing to determine the issues and findings of fact "[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Id.*

### B.     Waiver of Right to Appeal and Collateral Attack

Quijano has alleged wrongs of constitutional proportion. However, the Court must first determine whether discussion of such allegations is pretermitted by Quijano's waiver of his right to collaterally attack his conviction and sentence. Generally, if a waiver is knowing and voluntary, a defendant is not entitled to file a § 2255. However, Quijano's breach of the plea agreement falls outside the scope of the § 2255 because it is a direct challenge to the validity of the agreement and thus, the waiver. *Cf. United States v. Branam*, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering Defendant's argument that the government breached the plea agreement, despite an appeal-waiver provision in the agreement itself). A court must first determine whether the waiver was knowing and voluntary, and then evaluate whether the waiver "applies to the circumstances at hand . . . ." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005). As such, the Court will first determine

whether Quijano validly entered a plea of guilty before making any determinations about the alleged breach itself.

### 1) *Requirements for a Valid Waiver*

It is well-established that a defendant may waive the right to appeal and collaterally attack a conviction and sentence, so long as the waiver is both knowing and voluntary. *See, e.g.*, *Bond*, 414 F.3d at 544; *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Robinson*, 187 F.3d 516, 517-18 (5th Cir. 1999); *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997). "The voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988). If the plea was knowing, voluntary, and intelligent, a district court will uphold a guilty plea challenged in a habeas corpus proceeding. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Conversely, a guilty plea, if induced by improper promises, threats, deception, or misrepresentation, which deprive it of the character of a voluntary act, is void. *See Machibroda v. United States*, 368 U.S. 487, 493 (1962); *see also United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

A district court may examine the validity of a waiver when a defendant files a motion to collaterally attack his conviction or sentence. *See United States v. Boyd*, No. 3:06-cv-1365-H, 2007 WL 900949, at *3 (N.D. Tex. Mar. 23, 2007); *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992) ("We think that a defendant's waiver of her right to appeal deserves and, indeed, requires the special attention of the district court."). In limited circumstances, a defendant may plead around a waiver and claim ineffective assistance of counsel if he alleges that the waiver itself was tainted by counsel's ineffective assistance. *White*, 307 F.3d at 339-43. With these principles in mind, the Court will now examine the validity of Quijano's plea.

### 2) *Federal Rule of Criminal Procedure 11*

Rule 11 of the Federal Rules of Criminal Procedure governs the entry of guilty pleas and establishes certain procedures that courts must follow before accepting such pleas. Fed. R. Crim. P. 11. Specifically, the judge must address the defendant personally in open court to ensure that the defendant understands certain information, including the nature of the charge in relation to the facts of his case, as well as his rights as a criminal defendant. *United States v. Vonn*, 535 U.S. 55, 62 (2002); Fed. R. Crim. P. 11. Furthermore, the Court must "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).

Courts must be careful not to accept a plea of guilty unless made voluntarily after proper advice and with full understanding of the consequences. *See* Fed. R. Crim. P. 11; *Vonn*, 535 U.S. at 80 (citing *Kercheval v. United States*, 274 U.S. 220, 223 (1927)). The Fifth Circuit notes that compliance with the Rule 11 admonishments provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Vonn*, 535 U.S. at 78 (Stevens, J., concurring). Moreover, the requirement that a waiver be knowing and voluntary is not a requirement that a court ensure that the defendant's knowledge is perfect; rather, a court "must only ascertain whether the defendant has a realistic or reasonable understanding of his plea." *Boyd*, 2007 WL 900949 at *4 (citing *United States v. Ruiz*, 536 U.S. 622, 631 (2002); *Gracia*, 983 F.2d at 627-28). "Although district courts are encouraged to track the language of Rule 11," deviations from the language of the rule do not result in a conclusion that the defendant was uninformed of his or her rights or that the plea was involuntarily or unknowingly entered. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

The Supreme Court has long held that guilty pleas are not to be overturned on collateral review for mere non-compliance with Rule 11. *See United States v. Timmreck*, 441 U.S. 780, 783-85 (1979). Even a "failure to advise the defendant of his right to appeal does not entitle" the defendant to collateral relief, unless he has suffered "prejudice from the omission." *See Peguero v. United States*, 526 U.S. 23, 24 (1999).

Any variance from Rule 11 is analyzed under a harmless error standard. *See* Fed. R. Crim. P. 11(h). Under the harmless error analysis, the Court determines whether (1) the court failed to comply with the rule during the plea colloquy; and (2) if so, whether this noncompliance affected the defendant's substantial rights such that knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty. *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (en banc). In other words, whether the Court's flawed compliance with Rule 11 "may reasonably be viewed as having been a material factor affecting [defendant]'s decision to plead guilty." *Id.* To obtain collateral review on a challenge to admonitions given under Rule 11, those who plead guilty must show "that the Rule 11 proceeding was inconsistent with the rudimentary demands of fair procedure 'or constituted a complete miscarriage of justice.'" *Vonn*, 533 U.S. at 64 (quoting *Timmreck*, 441 U.S. at 783).

        3)        *Application*

Quijano appeared before the Magistrate Court for rearraignment on November 9, 2006. [Minute Entry of November 9, 2006]. Per the requirements of Rule 11, before the court accepts a plea of guilty, it must personally address the defendant and determine that he understands the terms of "any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). The Court must also address the defendant personally to determine whether the plea is voluntary and not the result of any force, threats, or promises (other than promises in a plea agreement). Fed. R. Crim. P. 11(b)(3). During the plea colloquy, the

Magistrate Judge asked Quijano a number of questions, *see supra* at 3, but never addressed him personally regarding the plea agreement. Specifically, the Magistrate Judge never inquired whether Quijano understood the terms of the oral plea agreement, or more importantly, whether any other promises existed. *See* Fed. R. Crim. P. 11(b)(2). Quijano now alleges that he only decided to enter a plea of guilty because he was promised a concurrent sentence. [Dkt. No. 1 at 4, 13]. Thus, it appears that Quijano entered a plea based on a different understanding from that on which the Magistrate Judge relied when accepting his plea. In short, the Magistrate Judge failed to ascertain whether Quijano had a realistic or reasonable understanding of his plea. S*ee Boyd*, 2007 WL 900949 at *4.

If what Quijano alleges is true—that he "only agreed to plea guilty to a concurrent sentence", [Dkt. No. 1 at 4]—then the Magistrate Judge should have recognized that his plea was not knowing given the inconsistency between his alleged basis for entering a plea and the terms of the oral agreement as explained by AUSA Sardelli at the beginning of the hearing. If such is the case, because Quijano's "knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty," there is a strong likelihood that his substantial rights were affected. *See Johnson*, 1 F.3d at 302.

On this record, the Court is unable to determine whether the Magistrate Court's non-compliance with Rule 11 was a material factor affecting Quijano's decision to plead guilty;[5] whether Quijano's waiver of his right to appeal and to collaterally attack his sentence and conviction was knowing and voluntary; or whether the Magistrate Court's error was harmless. Consequently, the Court finds it necessary to hold an evidentiary hearing to establish whether such

---

[5] Even had such a promise been made, absent a binding plea agreement, the Court would not be obligated to follow such agreement. Had such agreement been brought to the Magistrate Court's attention, the Court should have explained to Quijano that the District Court was not bound to follow such agreement. Had Quijano been properly advised of the non-binding nature of the alleged promise, he might have nonetheless pled guilty as, if he went to trial and was found guilty, he would not get a reduction for acceptance of responsibility or waiver of appeals and collateral attacks.

a promise was indeed made. The issues to be determined at such a hearing are (1) whether a promise to run the sentences concurrent was made; (2) whether Quijano's plea was knowing and voluntary; and (3) whether the failure to comply with Rule 11 was harmless error.

## III.    CONCLUSION

Upon reviewing Quijano's petition, the Court believes that an evidentiary hearing is required. Accordingly, the United States Marshal is **ORDERED** to produce before the Court Petitioner David Andres Quijano-Rodriguez, prisoner number 59237179, on August 4 at 2:30 p.m. It is further **ORDERED** that the following parties appear on the same date and time for a hearing on Quijano's cause: (1) Assistant United States Attorney Brian Sardelli; (2) Guillermo Garcia (appointed counsel for Quijano); and (3) Attorney Jeffrey Czar. The Clerk of the Court shall serve a copy of this Order on the Government. The Government may file a response within thirty (30) days from the date of this Order but is not required to do so.

IT IS SO ORDERED.

Done this 13th day of June, 2008, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**